O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAI LIU and JASON L. CARBONNEAU, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>SEALY, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-05490-MEMF-AS<br><br>**ORDER GRANTING REQUEST FOR JUDICIAL NOTICE [ECF NO. 21-3] AND DENYING MOTION TO REMAND [ECF NO. 14]** |

Before the Court is Plaintiffs' Motion to Remand, ECF No. 14, and the Defendants' Request for Judicial Notice, ECF No. 21-3. For the reasons stated herein, the Court hereby GRANTS the Request and DENIES the Motion.

/ / /

/ / /

/ / /

/ / /

1

**INTRODUCTION**

I. **Background**[1]

    A. **Factual Allegations**[2]

Plaintiffs Kai Liu and Jason Carbonneau were hourly, non-exempt employees for Sealy, Inc. ("Defendant" or "Sealy"; together with Does 1-10, "Defendants") from approximately September 2019 through approximately January 2024 and from approximately July 2021 through approximately February 2024, respectively. Compl. ¶ 7. Both Liu and Carbonneau are California residents. *Id.* Defendants are business entities with their principal place of business in Los Angeles, California. *Id.* ¶¶ 7, 9. As Sealy employees, Liu and Carbonneau typically worked in excess of eight hours in a workday and generally worked at least five days in a workweek. *Id.* ¶ 13.

Due to certain policies, practices or procedures, Plaintiffs suffered various California Labor Code ("Labor Code") and California Business and Professional Code violations. *Id.* ¶¶ 14–20. In particular, Defendants failed to pay Plaintiffs for all of the hours they worked, including minimum wage and overtime wages; failed to provide Plaintiffs uninterrupted meal periods; failed to permit Plaintiffs to take uninterrupted rest periods; failed to indemnify Plaintiffs for expenses incurred during the discharge of their employment responsibilities; failed to timely pay Plaintiffs all final wages upon separation from employment; and failed to furnish accurate, itemized wage statements. *Id.* ¶¶ 14–20.

    B. **Procedural History**

Plaintiffs filed suit in suit in Los Angeles County Superior Court on May 21, 2024. *See* ECF No. 1 ("NOR"). Plaintiffs bring eight claims under California law: (1) failure to pay minimum wages; (2) failure to pay overtime compensation; (3) failure to provide uninterrupted meal periods; (4) failure to authorize and permit rest breaks; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages; (7) failure to provide accurate itemized wages statements; and

---

[1] Plaintiffs filed a related lawsuit against Defendants seeking civil penalties under the Private Attorney Generals Act for the same wage and hour violations alleged in the instant case. (No. 2:25-cv-01215-MEMF-AS.)

[2] The following factual background is derived from the allegations in Plaintiffs' Complaint, ECF No. 1, Ex.1 ("Complaint" or "Compl."), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

(8) unfair business practices. *See generally* Compl. Plaintiffs bring this action on behalf of other similarly situated hourly, non-exempt Sealy employees.

Defendants removed the action to this Court on June 28, 2024, under the jurisdiction of the Class Action Fairness Act ("CAFA"). *See* NOR. Plaintiffs filed the instant motion to remand on October 11, 2024. ECF No. 14 ("Motion" or "Mot."). Defendants filed their opposition on October 25, 2024. ECF No. 21 ("Opposition" or "Opp'n"). Plaintiffs filed their reply on October 31, 2024. ECF No. 22 ("Reply").

On May 8, 2025, the Court held a hearing on the Motion after circulating its tentative order. At the hearing, counsel for the Plaintiffs indicated that Plaintiffs wished to submit on the tentative.

## REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201(b) allows a court to take judicial notice of facts that are not subject to reasonable dispute because the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned." Fed. R. Evid. 201(b). Adjudicative facts that may be judicially noticed include "undisputed matters of public record," which differs from "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

Defendants request this Court take judicial notice of the following documents in support of their Opposition:

1. The 2021 Industrial Welfare Commission California Minimum Wage Order, MW-2021, and
2. The 2024 Industrial Welfare Commission California Minimum Wage Order, MW-2024.

ECF No. 21-3. They also request that this Court take judicial notice of the minimum wage rates set forth in these IWC Orders for the years 2020, 2021, 2022, 2023, and 2024. *Id.* The request is unopposed. Indeed, Plaintiffs cite at least one of the Orders, MW-2024, as well as the very same minimum wage rates in the Motion. *See* Mot. at 8 n2.

The Court may take judicial notice of Industrial Wage Orders of the California IWC. *Mendoza v. Home Depot, U.S.A. Inc.*, No. CV 09–05843 SJO (JCx), 2010 WL 424679, at *3 (C.D.Cal. Jan. 21,

2010) ("Defendant requests that the Court take judicial notice of ... [IWC] Wage Order 4–2001 ... Industrial Wage Orders are [ ] properly subject to judicial notice … Accordingly, the Court takes judicial notice of the … document[ ]"); *see also City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.") (citations omitted). Accordingly, the Court grants Defendants' request and takes judicial notice of IWC Wage Orders MW-2021 and MW-2024.

## MOTION TO REMAND

### I. Applicable Law

#### A. Federal Question Jurisdiction Under Section 301 Complete Preemption

A defendant may remove a state action to federal court if the federal court would have original subject matter jurisdiction over the action. 28 U.S.C. § 1441. Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Removal of a state action may be based on diversity or federal question jurisdiction. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). A defendant who removes a case from state court bears the burden of establishing federal jurisdiction. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682 (9th Cir. 2006). Failure to satisfy this burden militates remand. *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) (citation omitted).

When determining whether an action involves a federal question, "a [district] court applies the well-pleaded complaint rule." *Moore-Thomas v. Ala. Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009) (internal citations and quotations omitted). That rule provides that a federal question exists only when a "federal question is presented on the face of the plaintiff's properly pleaded complaint." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (internal quotation marks omitted). Accordingly, "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393

(1987)). Therefore, a "plaintiff can generally 'avoid federal jurisdiction by exclusive reliance on state law.'" *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir. 2020) (quoting *Caterpillar*, 482 U.S. at 392). A plaintiff may not, however, defeat removal by simply omitting necessary federal questions. *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010).

   i. Complete Preemption

Complete preemption is an "independent corollary to the well-pleaded complaint rule." *Retail Prop.*, 768 F.3d at 947 (internal quotation marks omitted). The doctrine "posits that there are some federal statutes that have such 'extraordinary pre-emptive power' that they 'convert[] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v Taylor*, 481 U.S. 58, 65 (1987)). "'When a plaintiff raises . . . a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore arising under federal law.'" *Id.* (quoting *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005)). Like the well-pleaded complaint rule, complete preemption is "applicable to removal jurisdiction only; it is not a doctrine of defensive preemption." *Id.*

To support a finding of complete preemption, the preemptive force of the federal statute at issue must be "extraordinary." *Metro. Life Ins. Co.*, 481 U.S. at 65. For this reason, the doctrine is narrowly construed. *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993). The Supreme Court has deemed Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which displaces any state cause of action for contracts violations between an employer and a labor organization, one of the "extraordinary" statutes where Congress "has manifested an intent to convert state-law claims into federal-question claims." *Id.* at 668 (citations omitted); *City of Oakland*, 969 F.3d at 905 (internal quotation marks omitted).[3]

Because Section 301's preemptive force extends to "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement," Section 301's preempts a state law claim so "inextricably intertwined" with the terms of

---

[3] The Court notes the other two "extraordinary" statutes—§ 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a) and §§ 85 and 86 of the National Bank Act, 12 U.S.C. 85, 86— are not relevant for the purposes of Plaintiffs' Motion.

5

a labor contract that resolution of the claim will require judicial interpretation of those terms. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11 (1985). It bears noting that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by Section 301." *Id.* at 211. When a state law provides rights that cannot be waived or modified by private contract, and if the rights can be enforced without resort to the express or implied terms of the contract, Section 301 preemption is inapplicable to claims brought under the relevant state law. *Id.* at 212 ("In extending the pre-emptive effect of Section 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract"); *see also Miller v. AT & T Network Sys.*, 850 F.2d 543, 545–46 (9th Cir. 1988).

The Ninth Circuit has articulated a two-part test to determine whether state law claims are preempted by Section 301. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). First, the Court must determine whether the claim seeks "purely to vindicate a right or duty created by the CBA itself." *Curtis v. Irwin Indus.*, Inc., 913 F.3d 1146, 1152 (9th Cir. 2019) (internal quotation marks omitted). If the right exists solely under the collective bargaining agreement ("CBA"), then the claim is preempted; no further analysis is required. *Id.* at 1153. But if not, the Court must then assess "whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply *looking to* versus *interpreting* the CBA." *Id.* (emphasis added). "At this second step, claims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)). A state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA. *Curtis*, 913 F.3d at 1153 (citations omitted).

### B. Class Action Fairness Act

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Removal of a state action to federal court is appropriate only if the district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). Pursuant to the

CAFA, federal courts have original jurisdiction over civil class actions in which (1) the aggregate number of members in the proposed class is 100 or more; (2) the amount in controversy exceeds the sum or value of $5 million; and (3) the parties are minimally diverse. 28 U.S.C. §§ 1332(d)(2), (5)(b).[4]

When a plaintiff files an action in state court over which federal courts might have jurisdiction, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1446. When the defendant does so pursuant to CAFA, the defendant must make a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If the plaintiff contests whether the amount of controversy is sufficient for jurisdiction, "evidence establishing the amount is required." *Id.*

The defendant who removed the case bears the burden "to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022). There is "no antiremoval presumption" in cases invoking CAFA jurisdiction. *Dart Cherokee*, 574 U.S. at 89. In other words, while a defendant bears the burden of showing removal is proper, there is no "thumb on the scale against removal." *Jauregui*, 28 F.4th at 994.

Rather, the procedure is that "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation marks omitted)). In determining the amount in controversy, the defendant may rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* However, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

It is settled law in the Ninth Circuit that CAFA's provisions should be interpreted broadly with a "strong preference" for class actions to be heard in federal court *when properly removed*.

---

[4] Here, it is undisputed that minimal diversity exists and the class contains more than 100 members. The only question is whether the amount in controversy requirement is satisfied.

*Jauregui*, 28 F.4th at 993. And in the early stages of litigation, a defendant has no choice but to rely on assumptions when calculating an amount in controversy using the plaintiff's complaint before resolving any disputes over key facts. *Id.* As a result, it is inappropriate to demand exact certainty from a defendant in their calculations of the amount in controversy. *Id.* However, "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Id.* at 996.

On the other hand, where "a defendant's assumption is rejected because a different, better assumption is identified . . . the district court should consider the claim under the better assumption—not just zero-out the claim." *Id.* In such circumstances, the Court should identify, applying a preponderance of the evidence standard, the best possible assumptions, and use them to calculate the total amount in controversy. *See id.* If the total amount is found to be greater than $5 million, the action will remain in federal court. *See* 28 U.S.C. § 1332(d)(2). If not, it should be remanded to state court. *See id.*

## II. Discussion

### A. Federal Question Jurisdiction

Defendants assert this Court retains jurisdiction under Section 301 because the Complaint "includes claims that can only be brought as contractual claims under a CBA," NOR at 3, and Plaintiffs' overall employment was governed by CBAs[5]. Opp'n at 1. First, Defendants argue that Plaintiffs' overtime claim (the second cause of action) is preempted because their CBA meets the threshold requirements of Labor Code Section 514 ("Section 514"), which contemplates an overtime exemption. *Id.* at 5–6. Second, Defendants further argue that Plaintiffs' minimum wage claim (the first cause of action) similarly implicates the Section 514 exemption because the Complaint asserts that all Plaintiffs' off-the-clock work time constituted overtime hours. *Id.* at 6–7. Third, Defendants argue that Plaintiffs' uninterrupted meal period claim (third cause of action), as it pertains to members of the putative class who are commercial drivers, is exempted under California Labor Code Section 512 ("Section 512") because the CBA "expressly provides for meal periods." *Id.* at 7–9.

---

[5] The Court refers to the CBAs in the singular for simplicity's sake for the remainder of this opinion.

1  Fourth, Defendants urge that Plaintiffs' remaining claims for failure to timely pay all final wages
2  (sixth cause of action), failure to furnish accurate itemized wages statements (seventh cause of
3  action), and unfair business practices (eighth cause of action) are preempted because they are
4  derivative of the underlying overtime, minimum wage, and meal period claims. *Id.* at 9. Defendants
5  rely solely on the LMRA preemption analysis in opposing remand. *Id.* at 5–9.

          i.    <u>Failure to Pay Overtime (Second Cause of Action)</u>

      Labor Code Section 510 sets forth the requirement that overtime work be compensated at a higher rate than an employee's regular rate of pay. Plaintiffs allege in their complaint that Defendants failed to pay the overtime compensation to which they were entitled under Section 510. Defendants assert that, pursuant to Section 514, the overtime requirements of Section 510 do not apply to the Plaintiffs because they are covered by a valid CBA, defined as a CBA that "expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514.[6]

      The Ninth Circuit has explicitly held that if a plaintiff's CBA meets the requirements of Section 514, their claim for overtime pay is controlled by their CBA, and—most importantly for these plaintiffs—their right to overtime exists "solely as a result of the CBA." *Curtis*, 913 F.3d at 1155 (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)). The Court finds that—just like the plaintiffs in Curtis—these Plaintiffs' CBA meets the requirements of Section 514. The CBA provides overtime premium wage rates for all overtime hours worked, ECF No. 3 at 14, 39, 70–71, 96–97, and the CBA also prescribes regular hourly rates of pay of not less than 30% more than the state minimum wage rates during the claim period, ECF No. 21-4, 21-5; ECF No. 3 at 28, 54–55, 84, 110.

---

[6] Section 510 provides the default rule for overtime compensation. However, that provision also explains that the overtime requirements described therein "do not apply to the payment of overtime compensation to an employee working pursuant to … [an] alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514." Cal. Lab. Code § 510(a).

Plaintiffs themselves do not contest that the CBA in this case qualifies under Section 514. Rather, they argue that the overtime claim seeks to enforce "non-negotiable statutory rights and protections arising exclusively from state law" that are independent of the CBAs. *See* Mot. at 16. Plaintiffs also attempt to distinguish *Curtis* because that case concerned a motion to dismiss and the plaintiff in *Curtis*, unlike here, conceded the applicability of the CBAs. *See* Reply at 1.

The Court finds such arguments unavailing. The Ninth Circuit has made clear that when a CBA "meets the requirements of Section 514" the claim for overtime pay "is controlled by [the] CBA," and is "preempted under § 301." *Curtis*, 913 F.3d at 1155. Moreover, Plaintiffs offer no reason why the motion to dismiss distinction is relevant to the preemption analysis or the Ninth Circuit's holding in *Curtis*. 913 F.3d at 1154 ("Thus, if a CBA satisfies the requirements of section 514, the requirements of section 510(a) do not apply.") (internal quotation marks omitted).

Plaintiffs also argue that Defendants have not provided any evidence of the employees' actual wage rates through pay records. *See* Reply at 5. The Court is similarly unpersuaded. The Court makes no findings as to whether or not Plaintiffs were in fact paid appropriately as required under the CBA. Under *Curtis*, what is relevant for the purposes of the Labor Code Section 514 preemption analysis is whether the CBA satisfy the criteria set forth in that statutory provision. As previously explained, it is clear that the CBA in this case does.

Accordingly, Plaintiffs' overtime claim is governed by the CBA, not state law, and their claim is preempted by Section 301. Governing law requires that because Plaintiffs have raised a completely preempted state law claim, this Court must construe their complaint as having raised a federal claim, providing this Court with federal question jurisdiction. *See Retail Prop.*, 768 F.3d at 947 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from inception, a federal claim, and therefore arises under federal law.") (internal quotation marks omitted). Accordingly, Plaintiffs' overtime claim is preempted under Section 301.

    ii.   <u>Supplemental Jurisdiction</u>

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

The Court finds that all of the Plaintiffs' remaining claims derive from the same common nucleus of operative fact and will therefore exercise supplemental jurisdiction over those claims. *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850 (9th Cir. 2004) ("Nonfederal claims are part of the same case as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.") (internal quotation marks omitted). The Court therefore need not reach, and does not reach, the question of whether the other claims are preempted by Section 301—either independently or as derivative of any other claim.[7] That determination will be made if and when the Defendants seek to dismiss those claims on that basis.

### B. Class Action Fairness Act Jurisdiction

Because the Court finds that it has federal question jurisdiction as a result of Section 301 preemption, it need not consider whether the Class Action Fairness Act provides a separate basis for jurisdiction.

### CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The Defendants' Request for Judicial Notice is GRANTED;
2. The Plaintiffs' Motion to Remand is DENIED;
3. The parties are ORDERED to meet and confer with respect to Plaintiffs' stated intention to seek leave to amend their complaint;
4. The parties are ORDERED to meet and confer with respect to whether and how the Court should address the parties' remaining disputes about Section 301 preemption with respect to the other claims—either through the pending Motions for Judgment on the

---

[7] At the hearing, counsel for the Plaintiffs inquired as to whether the Court would be willing to remand the matter if the overtime claim was dismissed. The Court declined to provide an advisory opinion on this issue given that, as stated, the Court has not reached the question of whether the other claims are preempted by Section 301. Counsel for the Plaintiffs also asked that the Court grant Plaintiffs leave to amend the complaint. The Court declined to grant leave in the absence of a stipulation or a fully briefed motion seeking leave to amend.

Pleadings, ECF No. 27, or through a renewed Motion to Remand should the complaint be amended, or through some other mechanism.

5. The parties are ORDERED to meet and confer regarding Defendants' counsel's conflict with the current hearing date on the Motion for Judgment on the Pleadings, ECF No. 31; and

6. The parties are ORDERED to submit a joint statement to the Court on the foregoing issues by Friday, May 16, 2025.

IT IS SO ORDERED.

Dated: May 9, 2025

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge