UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KAI LIU and JASON L. CARBONNEAU, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

SEALY, INC.; and DOES 1 through 10, inclusive,

Defendants.

Case No.: 2:24-cv-05490-MEMF-AS

**ORDER DENYING MOTION TO REMAND [DKT. NO. 57]**

Before the Court is Plaintiffs' Renewed Motion to Remand, Dkt. No. 57. For the reasons stated herein, the Court hereby DENIES the Motion.

///

///

///

///

///

1

I.     **Background**

A.  **Factual Allegations[1]**

Plaintiffs Kai Liu and Jason Carbonneau were hourly, non-exempt employees for Defendant Sealy, Inc. from approximately September 2019 through approximately January 2024 and from approximately July 2021 through approximately February 2024, respectively. Dkt. No. 52 ("Compl.") ¶¶ 10-11. Both Liu and Carbonneau are California residents. *Id.* Sealy is a business entity with its principal place of business in Los Angeles, California. *Id.* ¶ 13. As Sealy employees, Liu and Carbonneau typically worked in excess of eight hours in a workday and generally worked at least five days in a workweek. *Id.* ¶ 17.

Due to certain policies, practices or procedures, Plaintiffs suffered various California Labor Code ("Labor Code"), California Business and Professional Code, and Private Attorneys General Act of 2004 ("PAGA") violations. *See generally id.* In particular, Sealy failed to pay Plaintiffs for all of the hours they worked, including minimum wage and overtime wages; failed to provide Plaintiffs uninterrupted meal periods; failed to permit Plaintiffs to take uninterrupted rest periods; failed to indemnify Plaintiffs for expenses incurred during the discharge of their employment responsibilities; failed to timely pay Plaintiffs all final wages upon separation from employment; and failed to furnish accurate, itemized wage statements. *Id.*

B.  **Procedural History**

Plaintiffs filed suit in suit in Los Angeles County Superior Court on May 21, 2024. *See* Dkt. No. 1-1 to -2. Plaintiffs brought eight claims under California law: (1) failure to pay minimum wages; (2) failure to pay overtime compensation; (3) failure to provide uninterrupted meal periods; (4) failure to authorize and permit rest breaks; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages; (7) failure to provide accurate itemized wages statements; and (8) unfair business practices. *See generally* Compl. Plaintiffs bring this action on behalf of other similarly situated hourly, non-exempt Sealy employees.

---

[1] The following factual background is derived from the allegations in Plaintiffs' Complaint, Dkt. No. 52 ("Compl."), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

Sealy removed the action to this Court on June 28, 2024, under the jurisdiction of the Class Action Fairness Act ("CAFA"). *See* Dkt. No. 1 ("NOR"). The Notice of Removal relied upon the Declaration of Drew Millar. Dkt. No. 3 ("Millar Decl."). Plaintiffs filed a Motion to Remand on October 11, 2024. Dkt. No. 14. Sealy filed its Opposition on October 25, 2024. Dkt. No. 21. Plaintiffs filed their reply on October 31, 2024. Dkt. No. 22.

On May 9, 2025, the Court issued an Order granting the Request for Judicial Notice and Denying the Motion to Remand. Dkt. No. 34. The Court denied the Motion to Remand on the basis that Plaintiffs' overtime claim was governed by the CBA, not state law, and subsequently exercised supplemental jurisdiction over all remaining claims. *Id.* The Court did not reach the question of the reasonableness of any amount-in-controversy assumptions made by Sealy. *Id.*

On May 29, 2025, Plaintiffs filed to Leave to Amend the Complaint, seeking to dismiss the overtime claim, in full, and to dismiss the meal period claim with respect to Plaintiff Kai Liu and Defendant's other non-exempt drivers. Dkt. No. 36. On August 19, 2025, the Court granted Plaintiffs' Motion for Leave to Amend. Dkt. No. 46.

On August 20, 2025, Plaintiffs filed their First Amended Complaint. Dkt. No. 45. Sealy filed an Answer on September 3, 2025. Dkt. No. 47.

On September 22, 2025, the Court granted the parties' Stipulation, Dkt. No. 50, to consolidate the Class and PAGA Actions. Dkt. No. 51.

On September 29, 2025, Plaintiffs filed their Consolidated Complaint. Dkt. No. 52 ("Compl."). The Consolidated Complaint alleges eight claims under California law: (1) failure to pay minimum wages; (2) failure to provide meal periods; (3) failure to authorize and permit rest breaks; (4) failure to indemnify necessary business expenses; (5) failure to timely pay final wages; (6) failure to provide accurate itemized wages statements; (7) unfair business practices; and (8) civil penalties under PAGA. *See id.* Sealy filed an Answer on October 6, 2025. Dkt. No. 54.

Plaintiffs filed the instant Motion on October 30, 2025. Dkt. No. 57 ("Motion"). Sealy filed its Opposition on November 13, 2025, to which was appended a Supplemental Declaration by Millar. Dkt. Nos. 59 ("Opposition"), 59-1 ("Supp. Millar Decl."). Plaintiffs filed their reply on November 20, 2025. Dkt. No. 61 ("Reply").

The Court held a hearing on December 18, 2025.

I.    **Applicable Law**

**A.  Federal Question Jurisdiction Under Section 301 Complete Preemption**

A defendant may remove a state action to federal court if the federal court would have original subject matter jurisdiction over the action. 28 U.S.C. § 1441. Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Removal of a state action may be based on diversity or federal question jurisdiction. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). A defendant who removes a case from state court bears the burden of establishing federal jurisdiction. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682 (9th Cir. 2006). Failure to satisfy this burden militates remand. *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) (citation omitted).

When determining whether an action involves a federal question, "a [district] court applies the well-pleaded complaint rule." *Moore-Thomas v. Ala. Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009) (internal citations and quotations omitted). That rule provides that a federal question exists only when a "federal question is presented on the face of the plaintiff's properly pleaded complaint." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (internal quotation marks omitted). Accordingly, "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)). Therefore, a "plaintiff can generally 'avoid federal jurisdiction by exclusive reliance on state law.'" *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir. 2020) (quoting *Caterpillar*, 482 U.S. at 392). A plaintiff may not, however, defeat removal by simply omitting necessary federal questions. *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010).

### B. Complete Preemption

Complete preemption is an "independent corollary to the well-pleaded complaint rule." *Retail Prop.*, 768 F.3d at 947 (internal quotation marks omitted). The doctrine "posits that there are some federal statutes that have such 'extraordinary pre-emptive power' that they 'convert[] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v Taylor*, 481 U.S. 58, 65 (1987)). "'When a plaintiff raises . . . a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore arising under federal law.'" *Id.* (quoting *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005)). Like the well-pleaded complaint rule, complete preemption is "applicable to removal jurisdiction only; it is not a doctrine of defensive preemption." *Id.*

To support a finding of complete preemption, the preemptive force of the federal statute at issue must be "extraordinary." *Metro. Life Ins. Co.*, 481 U.S. at 65. For this reason, the doctrine is narrowly construed. *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993). The Supreme Court has deemed Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which displaces any state cause of action for contracts violations between an employer and a labor organization, one of the "extraordinary" statutes where Congress "has manifested an intent to convert state-law claims into federal-question claims." *Id.* at 668 (citations omitted); *City of Oakland*, 969 F.3d at 905 (internal quotation marks omitted).[2]

Because Section 301's preemptive force extends to "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement," Section 301's preempts a state law claim so "inextricably intertwined" with the terms of a labor contract that resolution of the claim will require judicial interpretation of those terms. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11 (1985). It bears noting that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by Section 301." *Id.* at 211. When a state law provides rights that cannot be waived or

---

[2] The Court notes the other two "extraordinary" statutes—§ 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a) and §§ 85 and 86 of the National Bank Act, 12 U.S.C. 85, 86—are not relevant for the purposes of Plaintiffs' Motion.

modified by private contract, and if the rights can be enforced without resort to the express or implied terms of the contract, Section 301 preemption is inapplicable to claims brought under the relevant state law. *Id.* at 212 ("In extending the pre-emptive effect of Section 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract"); *see also Miller v. AT & T Network Sys.*, 850 F.2d 543, 545–46 (9th Cir. 1988).

The Ninth Circuit has articulated a two-part test to determine whether state law claims are preempted by Section 301. *Burnside v. Kiewit Pac. Corp.*,491 F.3d 1053, 1059–60 (9th Cir. 2007). First, the Court must determine whether the claim seeks "purely to vindicate a right or duty created by the CBA itself." *Curtis v. Irwin Indus.*, Inc., 913 F.3d 1146, 1152 (9th Cir. 2019) (internal quotation marks omitted). If the right exists solely under the collective bargaining agreement ("CBA"), then the claim is preempted; no further analysis is required. *Id.* at 1153. But if not, the Court must then assess "whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply *looking to* versus *interpreting* the CBA." *Id.* (emphasis added). "At this second step, claims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)). A state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA. *Curtis*, 913 F.3d at 1153 (citations omitted).

### C. Class Action Fairness Act

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Removal of a state action to federal court is appropriate only if the district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). Under CAFA, federal courts have original jurisdiction over civil class actions in which (1) the aggregate number of members in the proposed class is 100 or more; (2) the amount in controversy exceeds the sum or value of $5,000,000; and (3) the parties are minimally diverse. 28 U.S.C. §§ 1332(d)(2), (5)(b).

When a plaintiff files an action in state court over which federal courts might have jurisdiction, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1446. When the defendant does so pursuant to CAFA, the defendant must make a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If the plaintiff contests whether the amount of controversy is sufficient for jurisdiction, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

The defendant who removed the case bears the burden "to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022). There is "no antiremoval presumption" in cases invoking CAFA jurisdiction. *Dart Cherokee*, 574 U.S. at 89. In other words, while a defendant bears the burden of showing removal is proper, there is no "thumb on the scale against removal." *Jauregui*, 28 F.4th at 994.

Rather, the procedure is that "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation marks omitted)). In determining the amount in controversy, the defendant may rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* However, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Thus, when the calculations cannot be justified by the allegations in the complaint—or are "unreasonable" assumptions—the removing party must present evidence to support the assumptions made. *Perez v. Rose Hills Co.*, 131 F.4th 804, 809 (9th Cir. 2025). Put another way, the district court must first consider whether any assumptions made by the defendant are a reasonable interpretation of the complaint, and my not reject assumptions on the basis that they are not supported by evidence. *Perez*, 131 F.4th at 809.

It is well-settled in the Ninth Circuit that CAFA's provisions should be interpreted broadly with a "strong preference" for class actions to be heard in federal court *when properly removed*. *Jauregui*, 28 F.4th at 993. And in the early stages of litigation, a defendant has no choice but to rely on assumptions when calculating an amount in controversy using the plaintiff's complaint before resolving any disputes over key facts. *Id.* As a result, it is inappropriate to demand exact certainty from a defendant in its calculations of the amount in controversy. *Id.* However, "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Id.* at 996.

On the other hand, where "a defendant's assumption is rejected because a different, better assumption is identified . . . the district court should consider the claim under the better assumption—not just zero-out the claim." *Id.* In such circumstances, the Court should identify, applying a preponderance of the evidence standard, the best possible assumptions, and use them to calculate the total amount in controversy. *See id.* If the total amount is found to be greater than $5 million, the action will remain in federal court. *See* 28 U.S.C. § 1332(d)(2). If not, it should be remanded to state court. *See id.*

II.     **Discussion**

   **A.  Federal Question Jurisdiction**

Plaintiffs assert that the alleged claims in their Consolidated Complaint, *see* Compl., arise "wholly under state law" and "do not allege violation of the terms of any CBAs or breach of contract." Motion at 14. In its Opposition, Sealy argues that Plaintiffs' claims are preempted by Section 301 because they raise questions as to and are substantially dependent on the interpretation of the CBA. Opposition at 21-22. For the reasons stated, the Court finds that Plaintiffs' claims are not subject to federal question jurisdiction.

Plaintiffs point to the *Burnside* test,[3] arguing that Sealy "do[es] not explain how Plaintiffs' claims require" any interpretation or analysis under the CBA. Motion at 15-16. Plaintiffs emphasize that Sealy do[es] not assert preemption under step one of the *Burnside* test and subsequently failed to

---

[3] The *Burnside* test is equivalent to the *Curtis* test. The Court will refer to the two-step analysis as the *Curtis* test.

specify how Plaintiffs' state law claims are substantially dependent on the CBA. Motion at 15-16; Reply at 4-5. Plaintiffs contend that Sealy cannot rely on the mere existence of the CBA and "its affirmative defense of Section 301 preemption" to warrant federal question jurisdiction. *Id.* at 16-17; Reply at 4 (stating that *Caterpillar* does not stand for the notion that § 301 preemption exists *whenever* there is a CBA, but rather, only in actions involving a CBA").

In particular, Plaintiffs explain how their minimum wage as well as meal and rest claims seek damages and enforcement under Section 1194 of the California Labor Code, not the CBA, thereby favoring non-preemption under *Burnside*. Reply at 5-6. As these underlying claims are preempted and Sealy does not argue Plaintiffs' unreimbursed expense claims are preempted, Plaintiffs state that "there is no basis for original jurisdiction." *Id.*

On the other hand, Sealy asserts this Court retains jurisdiction under Section 301. Opposition at 20. It maintains that Plaintiffs have recycled arguments already reviewed and denied by the Court. *Id.* at 20-21. Sealy states that the minimum wage claims are intertwined with what the CBA considers as overtime work while the meal and rest claims implicate the Richmond and City of Industry CBAs. *Id.* at 22. Given that these claims are preempted by Section 301, Sealy posits that Plaintiffs' Derivative claims are preempted for the same reason and the remaining claims are subject to supplemental jurisdiction. *Id.*

i.   Plaintiffs' Minimum Wage Claim Is Not Preempted.

The Court determines that the *Curtis* test does not warrant preemption of Plaintiffs' claim. Under the first step, Sealy does not allege the Plaintiffs' claim seeks to "purely to vindicate a right or duty created by the CBA itself." *Curtis*, 913 F.3d at 1152. As to the second step, Sealy seeks to have this Court apply to the Plaintiffs' minimum wage claim the reasoning which applied to the now-dismissed overtime claim. Opposition at 21. As stated in the Court's prior Order denying Plaintiffs' Motion to Remand, in their overtime claim, the Plaintiffs alleged violations of Labor Code Section 510 which explicitly implicated the CBAs. However, in their minimum wage claim, the Plaintiffs allege violations of Labor Code violation is Section 1194 which does not implicate the CBAs. It provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to

the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Lab. Code § 1194. Section 1194 does not indicate its non-enforceability in the presence of a CBA. In fact, there is no mention of a CBA, in contrast to Section 510. Plaintiffs simply seek to recover "minimum wages for all non-overtime hours worked for Defendants." Compl. ¶ 37. Consideration or interpretation of the CBAs is not required to adjudicate the claim. Therefore, the Court does not find Plaintiffs' minimum wage claim is preempted under step two of the *Curtis* test.

ii.   Plaintiffs' Meal and Rest Period Claim Is Not Preempted.

Sealy's basis for asserting preemption of Plaintiffs' meal and rest claim is similarly unsubstantiated. Sealy details how the CBAs provide for meal and rest periods and that it can be difficult to ascertain if workers are duty-free or paid during these periods. Opposition at 22. Its contentions do not focus on the core of step two of the *Curtis* test: whether Plaintiffs' claim is substantially dependent on interpreting the CBA. *Curtis*, 913 F.3d at 1152. Plaintiffs allege violations under Section 226.7, seeking state statutory entitlement to meal and rest periods. Compl. ¶¶ 45-46, 49-51; Reply at 6. Just as Section 1194, Section 226.7 does not refer to a CBA exemption. As explained in Plaintiffs' Reply, the Court's determination will be based on documents and testimony pertaining to meal and rest periods, without reliance on the CBA. Thus, the Court does not find Plaintiffs' meal and rest claim are preempted under step two of the *Curtis* test.

iii.   Plaintiffs' Derivative Claims Are Not Preempted.

The parties make similar arguments as to federal jurisdiction over the derivative claims for "waiting time penalties, wage statement violations, and unfair business practices," each relying on their preemption arguments as to the minimum wage and meal and rest period claims. Opposition at 22-23; Reply at 6.

As discussed, the Court does not conclude that Plaintiffs' minimum wage or meal and rest period claim are preempted under *Curtis*. And the alleged Labor Code violations under Plaintiffs' derivative claims do not implicate the CBAs. *See* Labor Code §§ 201-03, 218.5-6, 226, 1174, 1174.5, 2698-99, 2699.3; Cal. Bus. & Prof. Code § 17200, *et seq*. Therefore, the Court does not find that the derivative claims are preempted.

In sum, Sealy has failed to meet its burden to establish that Plaintiffs' claims are substantially dependent on the interpretation of the CBAs. The mere existence of a CBA cannot transform a state law claim into a federal question. *Holman*, 994 F.2d at 66 (holding that the doctrine of complete preemption is narrowly construed).

Accordingly, there is no basis for original federal jurisdiction.

iv.   Supplemental Jurisdiction

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Although the Court finds that Plaintiffs' remaining claims derive from the same common nucleus of operative fact, the Court has no basis for original jurisdiction and will therefore not exercise supplemental jurisdiction over those claims. 28 U.S.C. §§ 1367(a), (c)(3).

Accordingly, the Court will not exercise supplemental jurisdiction over Plaintiffs' claims.

**B.  Class Action Fairness Act Jurisdiction**

Because the Court finds that it does not have federal question jurisdiction as a result of Section 301 preemption, it moves to consider whether the CAFA provides a separate basis for jurisdiction.

Plaintiffs argue that Sealy cannot prove, by a preponderance of the evidence, that Sealy's proffered evidence establishes the threshold amount in controversy ("AIC") required under CAFA. Motion at 6. Sealy contends that its estimations are reasonably based on the allegations set forth in Plaintiffs' Original Complaint,[4] Dkt. No. 1-2, as well as the supporting Supplemental Declaration from Drew Millar, satisfy the AIC under CAFA. Opposition at 8-9. For the reasons stated below, the Court determines that Sealy has met the AIC threshold required by CAFA.

---

[4] Sealy bases its arguments and calculations on Plaintiffs' Original Complaint at the time of removal. As stated below, the operative complaint is the Consolidated Complaint, Compl. The Court finds significantly similar allegations set forth in both complaints, with the overtime and meal and rest period claims to Plaintiff Kai Liu being dismissed from the Original Complaint.

Plaintiffs base their argument on the following basis: (1) Plaintiffs' Consolidated Complaint does not assert a specific amount, (2) the Millar Supplemental Declaration is unreliable as it consists of "conclusory assertions" without "providing documents supporting his estimated counts or . . . detail regarding what information" has been reviewed, and (3) Sealy has failed to present sufficient work data documentation despite being in "the best position to adduce" such evidence. Motion at 6-8; Reply at 7-8. Specifically, Plaintiffs allude to how Sealy's calculations are founded on "unsupported assumptions" regarding frequency of violations. Motion at 8; Reply at 7-8. Through the alleged baseless assumptions, Plaintiffs posit that Sealy is inflating the damages sought under each claim. *Id.*

In response, Sealy asserts the following: (1) CAFA jurisdiction is based on the pleadings at the time of removal, (2) Sealy submitted admissible evidence satisfying the AIC threshold, and (3) Sealy reasonably and permissibly relies on reasonable assumptions in support of removal. Opposition at 8-10.

The Court will address the disputed calculations under each asserted claim.

  i.  Federal Jurisdiction Is Determined By Examining the Operative Complaint.

Plaintiffs argue that their Consolidated Complaint, Compl., is the operative complaint, which the Court shall analyze when determining federal jurisdiction under CAFA. Reply at 4-5. Sealy disagrees, claiming that the "amount in controversy is based on the allegations in the removal action as it was originally filed," suggesting that the Court should solely consider the original complaint. Opposition at 8.

Per the Supreme Court, "When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30-31 (2025) (making a determination based on plaintiff's amended complaint which eliminated the federal law claims that enabled removal). "And it accords with a bevy of rules hinging federal jurisdiction on the allegations made in an amended complaint, because that complaint has become the operative one." *Id*; *see also St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 292-93 (1938) (finding the reduction of a claim below the requisite AIC

does not deprive a district court of jurisdiction); *Kirby v. Am. Soda Fountain Co.*, 194 U.S. 141, 145-46 (1904) (same).

*Royal Canin* is instructive. As argued by Plaintiffs, the operative complaint represents the complaint for purposes of the Court's federal jurisdiction analysis—Plaintiffs' Consolidated Complaint. *Royal Canin*, 604 U.S. at 30. *Royal Canin* is not in conflict with *St. Paul* or *Kirby*—authorities relied on by Sealy. Opposition at 8. In those cases, the Court did not rule that federal jurisdiction *must* be based on the *original* complaint. *St. Paul*, 303 U.S. at 292-93; *Kirby*, 194 U.S. at 145-46. Instead, the courts held that a party's subsequent amendment to reduce claims below the requisite AIC will not automatically deprive a federal court's jurisdiction. *Id.* Therefore, the Court reasons that for federal jurisdiction, the focus is on the operative complaint, Plaintiffs' Consolidated Complaint, and the Court may consider amendments from preceding complaints.

    ii.    <u>Sealy's Proffered Amount in Controversy is Reasonable.</u>

Because Sealy seeks removal, it has the burden to establish the requisite AIC by a preponderance of the evidence. *Jauregui*, 28 F.4th at, 99; *Dart Cherokee*, 574 U.S. at 89. As mentioned above, Plaintiffs contend that Sealy's proffered AIC calculations are based on conclusory assertions in the Millar Supplemental Declaration and unreasonable assumptions. Motion at 6; Reply at 7. As discussed below, the Court finds that the relevant assertions in the Millar Supplemental Declaration are not conclusory, and the assumptions made are properly grounded in the language of the complaint and reasonable.

    *1. The Millar Supplemental Declaration Provides Appropriate Support for the Sealy's Amount-In-Controversy Calculation.*

In his Declarations, Millar stated that he is Vice President of Human Resources for Sealy, and that he personally reviewed applicable employment records and data concerning current and former non-exempt employees. *See* Millar Decl. 1 ¶¶ 1–9; Supp. Millar Decl. ¶¶ 4–5. Thus, Millar's Declarations rely on his personal knowledge learned through his position and review of relevant data and records. Therefore, the Court finds the Millar Declarations are competent and must not be disregarded.

Plaintiffs argue that Millar's Declarations are unreliable as they lack proof or specification as to the underlying data used to calculate the AIC. Motion at 6-7; Reply at 7. Declarations and reasonable assumptions based on Plaintiffs' complaint allegations are proper for AIC determinations. *Ibarra*, 775 F.3d at 1197; *Arias*, 936 F.3d at 925. Further, Millar points to time detail reports and indicates that his calculations are based on "employment records and data." Supp. Millar Decl. ¶¶ 5-6. As a result, the Court does not find Plaintiffs' evidentiary concerns persuasive.

Additionally, Millar's Supplemental Declaration is based on refined workweek and pay period estimates, addressing Plaintiffs' concern that Millar's first Declaration was based on inflated workweeks, Motion at 6-7, by excluding any days off for sick leave, vacation, or other absences. *Id.*

### 2.    *Plaintiffs' Minimum Wage Claim*

Sealy originally removed this action based upon a set of assumptions that they asserted were reasonable and derived from the First Millar Declaration and the language of the Complaint. NOR ¶¶ 28-32. In particular, it assumed that, based on a preliminary review of the records, the putative class involved 598 non-exempt employees who worked approximately 74,156 workweeks. *Id.* ¶ 30. Accounting for California's $16 minimum wage and Plaintiffs' allegation that "during all such times, Sealy systematically failed and refused to pay Plaintiffs and the Class all such wages due, and failed to pay those wages twice a month," they reached an AIC calculation of $1,186,496 for minimum wage damages and $1,186,496 for liquidated damages. *Id.* ¶¶ 29-32. In their Motion, Plaintiffs assert that these assumptions are unreasonable because Sealy assumes a 100% violation rate which is unjustified by the record as the Consolidated Complaint does not allege any specific amount of unpaid work. Motion at 9. In response, the Sealy provides a second Declaration—the Supplemental Millar Declaration—and point to the language in the operative complaint regarding Plaintiffs and class members being "required to work off the clock, and uncompensated." Compl. ¶ 19; Opposition at 12-13; Supp. Millar Decl. ¶¶ 5-6. Sealy also revised the total workweeks used in its calculations, reducing the workweeks from 74,156 to 66,265, excluding dates when employees were on leave, vacation, or not working. Supp. Millar Decl. ¶ 5. The Plaintiffs respond that violations occurring "sometimes" do not support CAFA jurisdiction. Reply at 7.

The Court finds that Sealy's calculations are based on reasonable estimates and assumptions that are appropriately tethered to the allegations set forth in Plaintiffs' Consolidated Complaint. Although it may be true that "pattern and practice" and "sometimes" would not support a 100% violation rate, here, the language of the Consolidated Complaint is not merely of a "pattern and practice" or "sometimes." Rather, in their Consolidated Complaint, they assert that they were "*typically* scheduled to work at least 5 days in a workweek, and *typically* in excess of 8 hours in a single workday." Compl. ¶ 17 (emphasis added). They also alleged that they "were *required* to work off the clock, and uncompensated." *Id.* ¶ 19 (emphasis added). This language certainly supports an assumption of an average of 12 minutes of off the clock work daily. As the Ninth Circuit made clear in *Perez*, the fact that there may be other equally valid assumptions from this language does not make Sealy's assumptions unreasonable. *Perez*, 131 F.4th at 809. In sum, the Court finds that the Sealy's violation rate is a reasonable interpretation of the complaint.

Further, as Sealy's calculation is based on the Plaintiffs' suggested reasonable minimum wage rate of $14.70/hour, the Court finds Sealy's totals of $974,095 for unpaid minimum wage and $974,095 for liquidated damages under Section 1194.2[5] reasonable. Opposition at 12. As discussed, because the Consolidated Complaint is the operative complaint, the Court will not include Sealy's calculated overtime compensation based on the dismissed overtime claim. Therefore, the amount included in the Court's AIC determination under the minimum wage claim is $1,948,190.

### 3. Plaintiffs' Meal and Rest Period Claim

The parties dispute Sealy's calculated damages related to meal and rest periods.

In its Notice of Removal, Sealy assumed, from Millar's first Declaration and allegations set forth in the original Complaint, that Sealy failed to provide a meal and rest period at least once per workweek. NOR ¶¶ 41, 45. Accounting for California's $16 minimum wage and Plaintiffs' allegation that it was Sealy's "policy and practice to not authorize and permit" Plaintiffs and class members to take meal or rest periods, they reached an AIC calculation of $1,186,496 for meal period damages and $1,186,496 for rest period damages. *Id.* ¶¶ 37, 41, 42, 45. Plaintiffs assert that these

---

[5] Labor Code Section 1194.2 allows a plaintiff to recover liquidated damages (double damages) for Sealy's failure to pay minimum wages.

assumptions are unreasonable because Sealy assumes a 100% violation rate which is unjustified by the record as the Complaint does not allege any specific amount of unpaid work. Motion at 10. In response, the Sealy points to allegations in the operative complaint regarding the alleged "policy and practice" to not provide meal periods or authorize rest periods. Compl. ¶ 7; Opposition at 13-14. Sealy revised the total workweeks to 66,265 workweeks for this claim as well. Opposition at 13. In their Reply, Plaintiffs reassert that Sealy's valuations continue to be based off unsupported and unreasonable assumptions. Reply at 7-10.

The Court finds that Sealy's calculations are reasonable based upon the allegations set forth in Plaintiffs' Consolidated Complaint and supported by Ninth Circuit precedent. In *Perez*, the court found that defendant reasonably assumed a weekly violation based on plaintiff's allegation that defendant "committed violations 'at times.'" *Perez*, 131 F.4th at 806-10. The *Perez* court reiterated the *Ibarra* standard: a defendant can base the AIC on reasonable assumptions from allegations of the complaint. *Id.*; *Ibarra*, 775 F.3d at 1197. In Plaintiffs' Consolidated Complaint, Plaintiffs allege that it was a "policy and practice" for Sealy, "throughout the statutory period," to not provide meal and rest periods. Compl. ¶¶ 7, 18. The Consolidated Complaint further states that work during meal breaks were required. *Id.* ¶ 19. Thus, Sealy's weekly violation assumption is in accord with binding precedent and the assumed wages are reasonable. *Perez*, 131 F.4th at 809.

The Court therefore adopts Sealy's meal and rest period calculations. The Court concludes that the AIC determination under the meal and rest period claim is $1,172,890 (66,265 workweeks x 1 violation per week x $17.70 (lowest CBA hourly rate)) for meal violations and $1,172,890 890 (66,265 workweeks x 1 violation per week x $17.70 (lowest CBA hourly rate)) for rest violations, totaling $2,345,780.

### 4.   Plaintiffs' Section 204 Claim

The parties dispute Sealy's calculated damages under Section 204.

In its Notice of Removal, Sealy assumed, from Millar's first Declaration and allegations set forth in the original Complaint, that Sealy failed to timely pay wages twice a month. NOR ¶ 35. Accounting for 386 non-exempt employees, 9,563 pay periods, and Plaintiffs' allegation that "during

all such times, Sealy systematically failed and refused to pay Plaintiffs and the Class all such wages due, and failed to pay those wages twice a month," they reached an AIC calculation of $1,874,000. NOR ¶ 12; Compl. ¶¶ 28, 36, 42. Plaintiffs' arguments regarding Sealy's Section 204 calculations are identical to its minimum wage arguments—namely that the valuations are based on unfounded assumptions. Motion at 10; Reply at 9. Sealy contends that its calculations are reasonable because they reasonably assessed the pay periods, and violation rates based on Millar's first Declaration. Opposition at 14-15; Millar Decl ¶ 9. Plaintiffs respond that Sealy has demonstrated inconsistencies by altering its formula when calculating Section 204 damages. Reply at 9.

Failure to pay wages under Section 204, which centers around pay periods, results in penalties under Section 210 in the amount of $100 for an initial violation, and $200 for each subsequent violation, plus 25% of the amount unlawfully withheld. Cal. Lab. Code § 210.

Here, given that Plaintiffs' Consolidated Complaint alleges that Sealy systematically failed to pay wages twice a month, Compl. ¶¶ 19, 42, and class members "were *required* to work off the clock, and uncompensated," *id.* ¶ 19 (emphasis added), it is reasonable for Sealy to presume each class member was subject to an off-the-clock violation each pay period.[6] *Perez*, 131 F.4th at 809; Opposition at 14.

Sealy's calculation, however, includes overtime damages related to dismissed claim. Opposition at 14. Additionally, Sealy includes meal and rest period premiums in its Section 204 total despite the fact that Plaintiffs' Consolidated Complaint does not allege Section 204 violations under their meal and rest period claim.[7] Opposition at 14-15. The Court will subtract those amounts from Sealy's total. As such, the Court finds that the AIC determination under the Section 204 claim is $1,874,000 for the base penalties (386 pay periods x $100 + 9,177 pay periods x $200), plus

---

[6] Plaintiffs arbitrarily argue that Sealy bases pay periods should be further reduced due to a failure to account for absences in Sealy's already reduced total workweeks. Reply at 9 n.5. Plaintiffs offer no basis for this argument, and it is reasonable to assume violations per pay period occurred given that Plaintiffs allege they were "required" to work off the clock. Compl. ¶ 19.

[7] Sealy cites to *Naranjo v. Spectrum Sec. Servs, Inc.*, 13 Cal.5th 93, 117 (Cal. 2022) to argue that meal and rest period premiums should be considered as wages under Section 204. Opposition at 15. However, as stated by Plaintiffs' Reply, *Naranjo* addressed meal and rest period premiums under Section 203. 13 Cal.5th at 113-14. Additionally, Plaintiffs' Consolidated Complaint do not allege Section 204 violations under their meal and rest period claim. Compl. ¶¶ 44-47. Thus, it is not reasonable for Sealy to include meal and rest period premiums in its Section 204 calculation based on the allegations in Plaintiffs' Consolidated Complaint. *Ibarra*, 775 F.3d at 1197.

$60,880.94 (25% of $974,095 unpaid minimum wages x .25 [due to one-year statute of limitations]) for a total of $1,934,880.94.

5.   *Plaintiffs' Waiting Time Penalty Claim*

The parties dispute Sealy's calculated damages under Section 203.

In its Notice of Removal, Sealy assumed, from Millar's first Declaration and allegations set forth in the original Complaint, that all terminated employees are part of the waiting time penalty claim. Motion at 16. Accounting for 217 terminated non-exempt employees, California's $16 minimum wage, and Plaintiffs' allegation that "willfully failed and refused to timely pay Plaintiffs and the Class" all wages "at the conclusion of their employment," NOR ¶ 48, Sealy reached an AIC calculation of $833,280 for waiting time penalties. *Id.* ¶ 50. Plaintiffs similarly argues that a 100% violation assumption is unwarranted, and the Consolidated Complaint does not "allege all employees never received their final paychecks or that all employees worked 8 hours per day." Motion at 11-12. In Opposition, Sealy explains how its assumptions are based on Plaintiffs' allegations that "[t]hroughout the statutory period, Sealy willfully failed and refused to timely pay" class members. Opposition at 16. Given the numerosity of alleged violations, Sealy maintains that it is reasonable to assume that every non-exempt employee could be entitled to a waiting time penalty claim under Section 203. *Id.*

Section 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203. Because Plaintiffs assert a variety and frequency of Labor Code violations against Sealy, and importantly, have not alleged that any class members have been paid the at issue wages, *see generally* Compl., Sealy reasonably based its calculation under the assumption that each class member may be entitled to Section 203 penalties. *Perez*, 131 F.4th at 809. Plaintiffs' Reply states that since they only allege that Sealy failed to "pay all unpaid wages 'immediately upon termination,' a reasonable assumption could be that at least some putative class members were paid within 30-days of termination." Reply at 10. Although this is a reasonable assumption, it is equally

18

reasonable that Sealy has not paid any putative class members, especially given that the Consolidated Complaint does not allege any payment made. *Perez*, 131 F.4th at 809; *Ibarra*, 775 F.3d at 1197; *see generally* Compl. Thus, the Court finds that the AIC determination under the Section 203 claim is $921,816 (217 employees x 8 hours x 30 days x $17.70).

### 6. Plaintiffs' Expense Reimbursement Claim

The parties dispute Sealy's calculated damages related to unreimbursed expenses.

In its Notice of Removal, Sealy assumed, from Millar's first Declaration and allegations set forth in the original Complaint, that Plaintiffs and class members were forced to purchase gear or use their personal property for work purposes. NOR ¶ 46. Accounting for a $5 a week unreimbursed expenses, they reached an AIC calculation of $370,780 for unreimbursed expense damages. *Id.* ¶ 47. Plaintiffs claim that because the Consolidated Complaint does not "allege[] the dollar amount of expenses or the frequency with which they were incurred," Sealy's conservative $5 every other week unreimbursed expenses estimate is unreasonable. Motion at 10-11. Sealy contends that because Plaintiffs alleged statutory violations throughout the period, it was reasonable to assume a "conservative" $5 a week unreimbursed expense. Opposition at 17. Plaintiffs respond that Sealy has demonstrated inconsistencies by altering its formula when calculating unreimbursed expense damages. Reply at 9.

Plaintiffs seek to analogize Sealy's calculations to cited district court cases where Sealy provides no evidence of cost or pluck a violation rate out of the air. Motion at 11 (first citing *Gonzalez v. Randstad Prof'ls US, LLC*, No. 2:22-cv-05744-JLS-PD, 2022 WL 17081053, at *4 (C.D. Cal. Nov. 18, 2022); then citing *Salatino v. Am. Airlines, Inc.*, No. 23-CV-1779 JLS (BLM), 2024 WL 978963, at *6 (S.D. Cal. Mar. 7, 2024); then citing *Bryant v. Midwest Constr. Servs., Inc.*, No. CV 21-01588 PA (KKx), 2021 WL 4493845, at *3 (C.D. Cal. Sept. 30, 2021); and then citing *Toribo v. ITT Aerospace Controls LLC*, No. CV 19-5430- GW-JPRx, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019)).

Sealy's $5 every other week estimate, however, is not baseless. Plaintiffs allege that "throughout the statutory period," class members were not reimbursed for personal cell phone used for work purposes, maintenance of their own uniforms, and use of their own vehicles. Compl. ¶ 22.

Given the plethora of potential unreimbursed expenses, $5 every other week appears to be a reasonable amount. *Perez*, 131 F.4th at 809; *Ibarra*, 775 F.3d at 1197. Considering the workweeks, the Court finds that the AIC determination under for unreimbursed expenses is $165,662 (66,265 workweeks x $2.50).

### 7.  Plaintiffs' Wage Statement Penalties

The parties dispute damages pertaining to Sealy's alleged failure to provide accurate itemized wage statements.

In its Notice of Removal, Sealy assumed, from Millar's first Declaration and allegations set forth in the original Complaint, that Sealy failed to provide wage statements throughout the statutory period. NOR ¶¶ 51-53. Accounting for 386 non-exempt employees and 9,563 pay periods, they reached an AIC calculation of $937,000 for wage statement penalties damages. *Id.* ¶ 53. Plaintiffs assert that because they do not "allege any frequency of violations," it is unreasonable for Sealy to presume each class member is entitled to wage statement penalties under Section 226(a). Motion at 12-13. Sealy counters, stating that Plaintiffs have alleged that every wage statement is non-compliant, thereby substantiating a 100% violation rate. Opposition at 15.

The liability under Section 226(a) is expressed under subsection (e)(1):

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Lab. Code § 226(e)(1).

Just as the Court's analysis of the unreimbursed expenses, the Consolidated Complaint alleges that "throughout the statutory period," Sealy has intentionally and willfully "failed to furnish accurate wage statements." Compl. ¶¶ 19, 65. At no time do Plaintiffs indicate Sealy proffered compliant wage statements. *See generally* Compl. In fact, Plaintiffs allege that the "wage statements do not show [Sealy's] address as required by California law," thereby asserting a facial deficiency as to every wage statement. *Id.* ¶ 20. Thus, it is reasonable for Sealy to assume a 100% violation rate. *Perez*, 131 F.4th at 809; *Ibarra*, 775 F.3d at 1197. Therefore, the Court finds that the AIC

determination under for non-compliant wage statements is $937,000 (386 pay periods x $50 + 9,177 pay periods x $100).

### 8. Attorneys' Fees

The parties dispute Sealy's alleged attorneys' fees calculations.

In its Notice of Removal, Sealy considered, from the allegations set forth in the original Complaint, the Ninth Circuit 25% benchmark and valued Plaintiffs' attorneys' fees claims at $2,293,106. NOR ¶ 58. Plaintiffs assert that the Ninth Circuit 25% benchmark used by Sealy for attorneys' fees damages is unreasonable because: (1) the Ninth Circuit has rejected the 25% benchmark, and (2) Sealy's calculations are "conjectural." Motion at 13-14; Reply at 10-11.

In response, Sealy highlights how the 25% benchmark is reasonable given that Plaintiffs' counsel "regularly seeks fee awards of at least one-third of gross recovery in wage and hour class actions." Opposition at 18-19. Further, Sealy presents a lodestar analysis, accounting for Plaintiffs' counsels' fee applications, typical hours involved in wage and hour class actions, multipliers, concluding an attorneys' fees amount of $2,000,000. *Id.* In sum, Sealy estimates, conservatively, $1,339,336 under the 25% benchmark, or $2,000,000 under the lodestar analysis. *Id.* at 19. Plaintiffs respond that Sealy has failed to substantiate the applicability of the 25% benchmark and its lodestar calculations. Reply at 10-11.

The parties do not contest that Plaintiffs' counsel may be entitled to attorneys' fees if Plaintiffs prevail in this wage and hour class action. The Ninth Circuit provides that when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922 (emphasis added); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."). Because Plaintiffs seek attorneys' fees for Labor Code violations, attorneys' fees should be included in AIC calculations. *See* Compl. ¶¶ 9, 14, 19, 24, 26, 34, 39, 43, 45, 55, 62, 70, 88, 96, 98.

First, although the Court is not bound to the 25% benchmark, it finds 25% meets the reasonableness standard for AIC calculations. There is no indication that Plaintiffs' counsel seeks

less than 25% in attorneys' fees. Notably, Plaintiffs do not reject that Plaintiffs' counsel have sought one-third of gross recovery in other cases; they only assert that those cases cannot support the 25% benchmark. Reply at 10.

Second, Sealy's lodestar analysis is based on a $500 hourly rate, less than the fee applications submitted by Plaintiffs' counsel, which requested $900, $850, and $575 per hour. Opposition at 19. Similarly, Sealy has chosen conservative estimates for the expected hours as the cases cited involved class actions with less claims. *See, e.g.*, *Ridgeway v. Wal-Mart Stores Inc., 269 F.Supp.3d 975*, 980-81, 998 (N.D. Cal. 2017); *In re Taco Bell Wage & Hour Actions*, 222 F.Supp.3d 813, 822-23, 830 (E.D. Cal. 2016). And Sealy has included a modest multiplier of 2.0.

Thus, Sealy's attorneys' fees calculations are reasonable. As the AIC has surpassed $5,000,000 CAFA threshold before reaching the attorneys' fees, the Court will include the lesser 25% benchmark rate of $2,019,064.24 (25% of $8,076,256.94) in its final calculation. Opposition at 19.

The Court finds the total AIC is $10,205,991.20 based on the below subtotals of each claim:

1. Minimum Wage: $1,948,190
2. Meal and Rest Period: $2,345,780
3. Labor Code Section 204: $1,934,880.94
4. Labor Code Section 203: $921,816
5. Unreimbursed Expenses: $165,662
6. Wage Statements: $937,000
7. Attorneys' Fees: $2,041,198.24

Accordingly, the Court finds that Sealy has not met its burden to establish the requirements under CAFA for federal jurisdiction.

//

//

//

22

**III.    CONCLUSION**

For the foregoing reasons, the Court DENIES the Motion and retains jurisdiction in this Matter.

IT IS SO ORDERED.

Dated: March 25, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge